STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas S. MAYO, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2004AP1592–CR. Oral argument February 13, 2007. —Decided June 26, 2007.*

2007 WI 78

(Also reported in 734 N.W.2d 115.)

643

For the defendant-appellant-petitioner there were briefs by *Keith A. Findley* and *University of Wisconsin Law School,* Madison, and oral argument by *Keith A. Findley.*

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished, per curiam decision of the court of appeals[1], affirming the decision of the Circuit Court for Racine County, Judge Richard J. Kreul presiding, which entered a judgment of conviction against Thomas S. Mayo (Mayo) and denied Mayo's postconviction motion for a new trial.

¶ 2. In his petition for review, Mayo asks this court to determine whether the prosecutor's alleged improper comments during Mayo's trial warrant a new trial, either as plain error or in the interest of justice, despite the fact that defense counsel failed to object to such comments. Mayo further asks this court to determine whether a new trial is warranted, because of hearsay testimony given by the State of Wisconsin's (State's) witnesses concerning out-of-court statements of the complaining witness, Clarence Price (Price). Additionally, Mayo asks this court to determine whether his trial counsel rendered ineffective assistance by, among other things, failing to conduct an independent investigation, and by failing to obtain and use the transcript of Price's sworn testimony at the preliminary hearing. Mayo's claim of ineffective assistance of counsel overlaps with his other claims before this court.

¶ 3. We hold that, although there was improper prosecutorial argument in the case, such misconduct did not so infect the trial with unfairness as to consti-

---

[1] *State v. Mayo,* No. 2004AP1592–CR, unpublished slip op. (Wis. Ct. App. March 29, 2006).

tute a denial of Mayo's due process rights, thus warranting a new trial, either as plain error or in the interest of justice. He has not shown that the real controversy was not fully tried, nor has he established that there was a miscarriage of justice. There is not a substantial probability of a different result, even if a new trial were held. We further hold that the circuit court properly admitted testimony concerning Price's out-of-court statements to the police, under the excited utterance exception to the hearsay rule. *See* Wis. Stat. § 908.03(2) (2003–04)[2]. Finally, we hold that, although defense counsel rendered deficient performance by failing to conduct an independent investigation, Mayo has not established that there was a reasonable probability that the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Mayo was not prejudiced by such deficient performance. On balance, we are satisfied, viewing the deficiencies of defense counsel and the incidents of prosecutorial misconduct for their cumulative effect, that Mayo is not entitled to a new trial and, therefore, the decision of the court of appeals is affirmed.

I

¶ 4. This case involves events that occurred between Mayo and Price on November 15, 16, and 17, 2002. Mayo and Price both have criminal records, and both testified about the incidents that occurred on the dates at issue, but their accounts are substantially different.

¶ 5. According to Price, Mayo robbed him of 35 dollars at gunpoint in Racine, Wisconsin on November

---

[2] All further references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

16, 2002. Price testified that he was walking to the home of a friend when a man approached him, and asked him for a dollar. Price stated that he had seen the man before, and that the man had been introduced to him on the prior evening, November 15, as a friend of Price's uncle. Price said that the man's name was Thomas and identified him at trial as Thomas Mayo.

¶ 6. Price testified that, when Mayo asked him for a dollar on the evening of November 16, Price reached into his pocket to get a dollar. Price testified that Mayo pointed a gun at him, robbed him of the 35 dollars he was carrying, and struck him on the back of the head. Price said that Mayo then ran behind some bushes and told Price to walk in the opposite direction. Price testified that the robbery occurred in the driveway of his friend Jarrell, and that Price went into Jarrell's house and called his mother to inform her of the incident. Price testified that he then walked two blocks to another friend's house and called 911. Officer Dan Langendorf (Officer Langendorf) promptly responded to the call, at which time Price informed him of the encounter with Mayo.

¶ 7. Mayo testified that he was introduced to Price on the evening of November 15, 2002, by Price's uncle. Mayo stated that he encountered Price on the street the next evening, November 16, and purchased cocaine from Price. Mayo said that he was shorted on the amount of cocaine by Price, and he wanted to reclaim the 35 dollars he paid for the cocaine. Mayo testified that he struck Price in the jaw, then kicked and stomped Price's stomach and head while getting his 35 dollars back. Mayo stated that Price sought revenge by concocting a robbery story and reporting it to the police.

¶ 8. Price testified that on November 17, 2002, Mayo confronted him outside a Racine taco restaurant.

Price said that Mayo told him that the robbery was an accident, and that he intended to repay Price. Conversely, according to Mayo's testimony, Price and a companion confronted him outside of the restaurant, and attacked him with a tire iron, cutting his wrist. At trial, Mayo pointed out stains on the neck of the shirt he had been wearing on November 17, 2002, and claimed that they were blood stains from the cut on his wrist.

¶ 9. On November 17, 2002, Price called 911 to report that he was in the presence of the man who had robbed him the previous night. Sergeant Michael Ackley (Sergeant Ackley) and Officer Daniel Small (Officer Small) arrived at the restaurant soon after the call. Officer Small testified that Mayo was already running before the police arrived, and that he was unsure if Mayo was running because he saw the squad car or for another reason. Sergeant Ackley testified that Mayo began running when they stopped their squad car at the scene.

¶ 10. Officer Small and Sergeant Ackley gave chase. Mayo ran and entered a nearby brick house that was not Mayo's residence. Sergeant Ackley testified that he rapped on the door three different times over the course of twenty to forty seconds, announcing that he was a police officer. Mayo finally opened the door.

¶ 11. Sergeant Ackley testified that he was halfway finished with patting down Mayo when Price arrived and, without questioning, pointed at Mayo and explained that he was the man who robbed him. Mayo testified that the police took him back to the restaurant, where Price identified him. According to both Sergeant Ackley and Officer Small, Mayo did not respond to Price's accusation. Both officers said that Mayo did not exhibit any apparent injuries. Mayo was arrested for

653

obstructing an officer and was informed that he had been identified as having been involved in an armed robbery.

¶ 12. According to Sergeant Ackley's testimony, Mayo told him that he ran from the officers because he had a crack pipe on his person and did not want to get arrested for possession of drug paraphernalia. Mayo testified that, before opening the door for the police, he hid the crack pipe under the linoleum in the front hallway of the house to which he had fled.

¶ 13. At Mayo's trial in Racine County Circuit Court, Judge Richard J. Kreul presiding, Mayo and Price were the only two witnesses to testify, specifically, about the confrontation between them. Officer Langendorf testified about responding to the robbery call on November 16, 2002, and about his interview with Price. Sergeant Ackley and Officer Small testified about the arrest of Mayo on November 17, 2002.

¶ 14. During her opening statement and also during the presentation of trial testimony, the prosecutor remarked, and elicited testimony, regarding Mayo's silence concerning Price's accusation that he was the man who robbed him on November 16, 2002. During her closing arguments, the prosecutor made the following comments about her role as a prosecutor:

> The way a criminal case works is police reports are forwarded into the District Attorney's Office, we review them, we determine whether there should be a charge or there shouldn't be a charge. We have the discretion to do that. The case then is charged, and we have an open file policy, meaning that the defendant and defense attorney can have access to all of the police reports, so the defendant has had access and seen what all the evidence is against him and what the victim has said and what the police have said. He's had almost five

months to come up with something to attempt to explain his actions away, and you have now heard what he has come up with, which is something new.

¶ 15. The prosecutor also made the following statement in her closing arguments:

Let's look at some of the statements the defendant made while on the stand as opposed to the facts as we know them or things he previously stated. . . .

Well, he [Price] identified him [Mayo] and said that's the guy that robbed me. This was within the earshot of the defendant. . . . when Clarence Price said that's the guy that robbed me, that Thomas Mayo said nothing. . . .

Prior to him being arrested, if he was an innocent man, why would he say nothing at that point when he has been accused? . . .

My opinion would be that this was a crime of opportunity. The opportunity presented itself to the defendant and he took it.

¶ 16. Then, during her rebuttal argument, the prosecutor further stated:

Defense counsel has indicated that it's my job to put a spin on the evidence to convict the defendant. I described briefly what my job is in the first part of my closing. I look up police reports. . . . I determine whether I believe a person is guilty and whether I think it's just. I also have the discretion . . . to dismiss the charges if I think they're unjust, if they didn't happen, if it's not provable.

¶ 17. The prosecutor then made comments concerning the role of defense counsel, stating that defense counsel's job is to "get his client off the hook. That's his

655

only job here, not to see justice is done but to see that his client is acquitted. . . ." Mayo's counsel did not object to any of these comments.

¶ 18. When giving the jury instructions, the circuit court made no specific comment on the arguments of the prosecutor, but the court did give the standard instructions that opening statements and closing arguments of counsel are not evidence. *See* Wis JI—Criminal 50, 160.

¶ 19. On April 9, 2003, a Racine County jury found Mayo guilty of the three crimes with which he was charged: armed robbery with use of force, obstructing an officer, and battery while armed. Mayo was sentenced to serve seven years of initial confinement and eight years of extended supervision.

¶ 20. Mayo filed a postconviction motion seeking a new trial. In his postconviction motion, Mayo claimed that the prosecutor made numerous improper remarks in her opening statement, during trial, and in her closing arguments, and that such remarks warranted a new trial either as plain error or in the interest of justice. Mayo argued that defense counsel's failure to object to such remarks constituted ineffective assistance of counsel. Mayo also alleged that his trial counsel was ineffective for failing to object to the hearsay within Officer Langendorf's and Price's testimony concerning the conversation that took place between Officer Langendorf and Price on November 16, 2002. Mayo further alleged that his trial counsel was ineffective for failing to conduct any investigation, for failing to object when Mayo's right to remain silent was infringed upon, and for failing to obtain a copy of the preliminary hearing transcript, so that he could impeach Price with inconsistent preliminary hearing testimony.

¶ 21. The circuit court agreed that the prosecutor's closing arguments were improper. However, the circuit court found that the closing arguments, when viewed in context of the entire trial and the court's jury instructions that opening statements and closing arguments are not evidence, did not undermine the fairness of the trial. The court concluded that Mayo's attorney's failure to object to the prosecutor's closing arguments was permissible, considering the broad range of deference accorded to attorneys in their closing arguments. The circuit court also stated that the defense attorney's failure to object to the hearsay by Officer Langendorf and Price did not amount to ineffective assistance of counsel, since the testimony would have been admissible as an excited utterance. The court stated that the question of admissibility of the hearsay testimony was a close call, but that if there was any error on the issue, it was harmless.

¶ 22. In an unpublished opinion, the court of appeals affirmed the circuit court's decision on the postconviction motion. The court of appeals concluded that the prosecutor's remarks in her opening statement, during trial, and in her closing arguments did not prejudice the defendant, and that the defense attorney was not ineffective for failing to object to the remarks. The court of appeals held that the prosecutor's remarks regarding the operation of the district attorney's office were common knowledge. The court reasoned that references to "the facts as we know them" and the "crime of opportunity" referenced facts before the jury, not the prosecutor's personal opinion. The court of appeals stated that, although the references to a defense attorney's role were improper and "deserving of condemnation," Mayo was not prejudiced by the remarks, because they did not infect the trial with unfairness.

¶ 23. The court of appeals also held that the prosecutor's repeated commentary on Mayo's pre-*Miranda*[3] silence did not prejudice the defendant, and that the defense attorney was not ineffective for failing to object to such remarks. Mayo testified that he denied robbing Price immediately after Price accused him of being the robber. Thus, the court of appeals found that the prosecutor's reference to the alleged silence, and the testimony elicited on that issue, was proper impeachment of Mayo's testimony.

¶ 24. Concerning the hearsay issue, the court of appeals found that the hearsay testimony from Officer Langendorf, as well as Price's own testimony, was admissible under the excited utterance exception to hearsay. Wis. Stat. § 908.03(2). Because the court of appeals found that the hearsay was admissible evidence, the court concluded that defense counsel was not ineffective for failing to object to such evidence.

¶ 25. Mayo also argued before the court of appeals that his counsel was ineffective, because he failed to corroborate Mayo's testimony with the testimony of Argo McMorris (McMorris). Allegedly, McMorris was going to testify that she saw Mayo running and bloodied on November 17, 2002, and that Mayo told her that Price attacked him with a tire iron. Defense counsel testified at the postconviction motion hearing that he chose not to use this testimony in an effort to minimize the November 17 encounter, in favor of emphasizing the November 16 encounter. The court of appeals held that an attorney is not ineffective merely because a sound trial strategy fails. Mayo further argued that his counsel was ineffective because he failed to impeach Price's testimony. Although Price did present conflict-

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

ing testimony regarding whether he was with a companion on November 17, the court of appeals held that the failure to impeach did not prejudice the defendant.

¶ 26. After the court of appeals affirmed the circuit court, Mayo then filed a petition for review, which this court granted.

## II

¶ 27. This case presents several issues for our review. We must determine whether Mayo is entitled to a new trial due to plain error or in the interest of justice, including his claim that there were improper comments by the prosecutor during Mayo's trial, to which defense counsel failed to object. We also must determine whether the circuit court properly admitted Price's out-of-court statements under the excited utterance exception to the hearsay rule. Finally, we must determine whether Mayo's trial counsel rendered ineffective assistance of counsel. To resolve these issues, the following standards of review are applicable.

¶ 28. In order to evaluate Mayo's claim that he is entitled to a new trial, it is necessary for this court to review the record to determine if a new trial is warranted in the interest of justice or due to plain error. *See State v. Davidson,* 2000 WI 91, ¶ 87 n.16, 236 Wis. 2d 537, 613 N.W.2d 606. Wisconsin Stat. § 901.03(4) (2005–06), which recognizes the doctrine of plain error, states in relevant part, "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."

¶ 29. Under the doctrine of plain error, an appellate court may review error that was otherwise waived by a party's failure to object properly or preserve the

error for review as a matter of right. This court has not articulated a bright-line rule for what constitutes plain error, acknowledging that there is no "hard and fast classification" relative to its application. *Virgil v. State*, 84 Wis. 2d 166, 190–91, 267 N.W.2d 852 (1978). Rather, the existence of plain error will turn on the facts of the particular case. *Id.* Of particular importance is the quantum of evidence properly admitted and the seriousness of the error involved. *Id.* The burden is on the State to prove that the plain error is harmless beyond a reasonable doubt. *State v. King,* 205 Wis. 2d 81, 93, 555 N.W.2d 189 (1996).

¶ 30. Wisconsin courts may also grant a new trial in the interest of justice. Wis. Stat. § 751.06 (2005–06). In *Vollmer v. Luety*, 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990), we explained the reach and purpose of reversal in the interest of justice:

> In reviewing the cases in which we have interpreted the scope of our discretionary power to reverse judgments under sec. 751.06, stats., we conclude that the court of appeals, like this court, has broad power of discretionary reversal. This broad statutory authority provides the court of appeals with power to achieve justice in its discretion in the individual case. The first category of cases arises when the real controversy has not been fully tried. Under this first category, it is unnecessary for an appellate court to first conclude that the outcome would be different on retrial. The second class of cases is where for any reason the court concludes that there has been a miscarriage of justice. Under this second category . . . an appellate court must first make a finding of substantial probability of a different result on retrial.

¶ 31. Regarding the admissibility of the alleged hearsay statements, this court reviews evidentiary rul-

ings with deference to the circuit court as to whether it properly exercised its discretion, in accordance with the facts and accepted legal standards. *State v. Tucker,* 2003 WI 12, ¶ 28, 259 Wis. 2d 484, 657 N.W.2d 374. As with other discretionary determinations, this court will uphold a circuit court's decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion using a demonstrated rational process. *State v. Muckerheide,* 2007 WI 5, ¶ 17, 298 Wis. 2d 553, 725 N.W.2d 930.

¶ 32. This case also requires us to determine whether Mayo's trial counsel rendered ineffective assistance. The issue of whether a person was deprived of the constitutional right to the effective assistance of counsel presents a mixed question of law and fact. *State v. Trawitzki,* 2001 WI 77, ¶ 19, 244 Wis. 2d 523, 628 N.W.2d 801. The circuit court's findings of fact, that is, "the underlying findings of what happened," will be upheld unless they are clearly erroneous. *State v. Pitsch,* 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). Whether counsel's performance was deficient and prejudicial to his or her client's defense is a question of law that we review de novo. *Trawitzki,* 244 Wis. 2d 523, ¶ 19.

¶ 33. In *Strickland,* 466 U.S. at 687, the United States Supreme Court set forth a two-part test for determining whether counsel's actions constitute ineffective assistance. First, the defendant must demonstrate that counsel's performance was deficient. *Id.; State v. McDowell,* 2004 WI 70, ¶ 49, 272 Wis. 2d 488, 681 N.W.2d 500. Second, the defendant must demonstrate that counsel's deficient performance was preju-

dicial to his or her defense. *Strickland,* 466 U.S. at 687. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

### III

¶ 34. Mayo argues that the prosecutor engaged in misconduct during her opening statement, closing arguments, and elicitation of testimony, and that such misconduct constituted a denial of his due process rights, warranting a new trial. Mayo asserts that the prosecutor improperly commented on Mayo's pre-*Miranda* silence during the State's opening statement and in its case-in-chief. Mayo further asserts that the prosecutor's closing arguments did not stem from evidence, and that they were prejudicial.

¶ 35. Mayo argues that it is improper for parties to comment on facts not in evidence. *State v. Albright,* 98 Wis. 2d 663, 676, 298 N.W.2d 196 (Ct. App. 1980). He further argues that the prosecutor stated her personal opinion[4] in closing arguments, and that such opinion was improper under Wis. SCR 20:3.4(e) (2004)[5] and *State v. Johnson,* 153 Wis. 2d 121, 133 n.11, 449 N.W.2d 845 (1990)(stating that it is "unprofessional 'for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant.' "(citation omit-

---

[4] During closing argument, the prosecutor stated, "My opinion would be that this was a crime of opportunity."

[5] Wisconsin Supreme Court Rule 20:3.4(e)(2004) states, in relevant part, that a lawyer shall not "assert a personal knowledge of facts in issue . . . or state a personal opinion as to the justness of a cause, . . . or the guilt or innocence of an accused. . . ."

ted)). Mayo also alleges that the prosecutor improperly disparaged defense counsel by stating that it was defense counsel's role "not to see justice is done but to see that his client is acquitted. . . ."

¶ 36. Mayo also asserts that it was improper for the prosecutor to comment on and elicit testimony concerning Mayo's pre-*Miranda* silence on the day of his arrest. Mayo asserts that, by referring to Mayo's pre-*Miranda* silence in its opening statement and case-in-chief, the State violated Mayo's rights under the Fifth Amendment of the United States Constitution, and under Article I, Section 8 of the Wisconsin Constitution. The prosecutor also made references to Mayo's pre-*Miranda* silence during closing arguments and during the cross-examination of Mayo. Mayo acknowledges that those references were permissible. However, Mayo argues that the prosecutor's references to Mayo's pre-*Miranda* silence during her opening statement and during the direct examination of Price, Sergeant Ackley, and Officer Small were improper and violated Mayo's right against self-incrimination. *See State v. Adams,* 221 Wis. 2d 1, 584 N.W.2d 695 (Ct. App. 1998); *State v. Brecht,* 143 Wis. 2d 297, 311, 421 N.W.2d 96 (1988).

¶ 37. The State agrees with Mayo that the prosecutor's comments about Mayo's pre-*Miranda* silence during closing arguments and during the cross-examination of Mayo were not improper. The State argues that a prosecutor may comment on the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jury. Adams, 221 Wis. 2d at 19. The State argues further that the prosecutor did not state her opinion in her closing argument when she stated that "this was crime of opportunity" and that Mayo's testimony was contrary

663

to the "facts as we know them." Rather, the State asserts that these were comments on the evidence before the jury, as is allowed. It is the State's position that the prosecutor used references to Mayo's pre-Miranda silence during Mayo's cross-examination for the permissible purpose of impeachment.

¶ 38. Regarding the prosecutor's comments during closing arguments about the roles of the district attorney and defense counsel, the State argues that the prosecutor merely presented information that is common knowledge concerning what the prosecution and defense do. The State argues that such common knowledge, combined with the circuit court's instructions that statements and arguments of counsel are not evidence, clarified for the jury that the prosecutor's statements and arguments were clearly not to be regarded as evidence.

¶ 39. The State argues that, even if the prosecutor's statements and arguments were improper, they were insufficient to warrant a new trial, because statements and arguments must be looked at in the context of the entire trial and that, on balance, Mayo was not prejudiced. *See State v. Wolff*, 171 Wis. 2d 161, 168, 491 N.W.2d 498 (Ct. App. 1992). The State points out that defense counsel also made improper assertions in his closing argument, stating that it was the prosecutor's job to "spin[] the evidence into the way the prosecutor wants you to see it" and analogizing the prosecutor to Saddam Hussein.

¶ 40. At oral argument before this court, the State conceded that the prosecutor's remarks regarding Mayo's pre-Miranda silence during her opening statement, and during direct examination of the State's witnesses, were improper. However, the State argues that even if there was a Fifth Amendment violation of

Mayo's right to silence, it was harmless error. *Brecht*, 143 Wis. 2d at 317. The State asserts that Mayo's decision whether or not to testify was not affected by the State's use of the pre-Miranda silence because, on April 8, 2003, the first day of trial, defense counsel told the judge, prior to jury selection, that the only witness to testify for the defense would be Mayo. In his opening statement, the defense attorney again explained to the court, and also this time to the jury, that Mayo would be the only witness testifying for the defense.

¶ 41. The State also conceded in its brief that the prosecutor improperly commented on materials not in evidence, when she stated during closing argument that her job was to examine police reports, to decide whether to file charges, and to decide whether to dismiss charges. However, the State argues that Mayo's counsel did not object to the prosecutor's comments, and that the comments were not so objectionable as to have offended Mayo's right to due process.

¶ 42. While we are satisfied that, although some of the arguments of both the prosecutor and defense counsel were improper, the remarks did not reach a level warranting a new trial based either on plain error or in the interest of justice. Specifically, the prosecutor's statements that the role of defense counsel was to "get his client off the hook" and "not to see justice done but to see that his client was acquitted" were improper, even though they may have been invited by defense counsel's remarks about the prosecutor's role. Defense counsel's remarks in his closing argument analogizing the prosecutor to Saddam Hussein and accusing the prosecutor of "spinning the evidence" were also improper and disparaging. Such disparaging remarks, made by both the prosecutor and defense counsel in this case, did not comport with the rules of ethics and civility that

members of the bar are expected to, and required to, follow. Such remarks demean the judicial process and are not acceptable in Wisconsin courts. Under Supreme Court Rule 62.02(1)(c)(2002), lawyers are to "[a]bstain from making disparaging, demeaning or sarcastic remarks or comments about one another."

¶ 43. Although the prosecutor's disparaging remarks were improper, when looked at in context of the entire trial, they did not prejudice Mayo. *See Wolff*, 171 Wis. 2d at 168. When a defendant alleges that a prosecutor's statements and arguments constituted misconduct, the test applied is whether the statements " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Davidson,* 236 Wis. 2d 537, ¶ 88 (citation omitted). It is improper for parties to comment on facts not in evidence. *Albright,* 98 Wis. 2d at 676. However, a prosecutor may comment on the evidence, argue to a conclusion from the evidence, and may state that the evidence convinces him or her and should convince the jury. *Adams,* 221 Wis. 2d at 19. There is a fine distinction between what is and is not permitted concerning the lawyer's personal opinion. Even if there are improper statements by a prosecutor, the statements alone will not be cause to overturn a conviction. Rather, the statements must be looked at in context of the entire trial. *Wolff*, 171 Wis. 2d at 168.

¶ 44. The fact that defense counsel's role is to advocate for his client is common knowledge, shared by jurors. Under such circumstances, it is quite unlikely that the prosecutor's remarks about the role of defense counsel, and vice versa, had any significant influence over the jury's decision here. Furthermore, the circuit court instructed the jury that opening statements and

closing arguments are not evidence and are not to be considered by the jurors as evidence. We are satisfied, therefore, that the jury was not improperly influenced by the prosecutor's comments and that the comments did not so 'infect[] the trial with unfairness as to make the resulting conviction a denial of due process.' " *Davidson*, 236 Wis. 2d 537, ¶ 88 (citation omitted).

¶ 45. The prosecutor's comment during her closing arguments that Mayo committed a "crime of opportunity" was not purely opinion, but was based on evidence before the jury. The prosecutor explained that there were discrepancies between the police reports and Mayo's statements, as well as the discrepancies between Mayo's story of a drug deal gone bad and Price's story of a robbery. The prosecutor argued to a conclusion from the evidence, as is permitted under *Adams*, 221 Wis. 2d at 19. The prosecutor also explained the process by which she reviews a file, and decides whether to charge a person with a crime, and she explained that the prosecutor's office has an open file policy. These comments provided general information regarding the prosecutorial process, and did not, in this case, give the jury any information that would unfairly influence its decision and " 'infect[] the trial with unfairness. . . .'" *Davidson*, 236 Wis. 2d 537, ¶ 88 (citation omitted).

¶ 46. We agree with Mayo's position, and the State's concession at oral argument, that the prosecutor's remarks on Mayo's pre-*Miranda* silence, and the testimony she elicited in that regard, during the State's opening statement and case-in-chief, violated Mayo's right to remain silent under the Fifth Amendment of the United States Constitution, and Article I, Section 8 of the Wisconsin Constitution. We have held

that it is a "violation of the right to remain silent for the State to present testimony in its case-in-chief on the defendant's election to remain silent during a custodial investigation, after arrest." *Brecht,* 143 Wis. 2d at 310–11 (citation omitted). When a defendant testifies, "references by the State during cross examination, on redirect and in closing arguments to defendant's pre-*Miranda* silence do not violate the defendant's right to remain silent." *Adams,* 221 Wis. 2d at 8 (citation omitted). However, the prosecutor's references to Mayo's pre-*Miranda* silence in her opening statement and examination of the State's witnesses, prior to Mayo's testimony, were a violation of Mayo's constitutional right to remain silent.

¶ 47. In determining whether a constitutional error is harmless, the inquiry is as follows: " 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' " *State v. Harvey,* 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Neder v. United States,* 527 U.S. 1, 18 (1999)). This court also has formulated the test for harmless error in alternative wording. Under *Chapman v. California,* the error is harmless if the beneficiary of the error proves " 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *State v. Anderson,* 2006 WI 77, ¶ 114, 291 Wis. 2d 673, 717 N.W.2d 74 (quoting *Chapman v. California,* 386 U.S. 18, 24 (1967), reh'g denied, 386 U.S. 987 (1967)).[6] While we recognize that this court re-

---

[6] Recently, in *Fry v. Pliler,* 551 U.S. ___ (2007), the United States Supreme Court revisited the issue of harmless error, holding that in 28 U.S.C. § 2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a

cently has formulated the harmless error test in a variety of ways, whichever formulation is applied, we are satisfied that the error here was harmless for the reasons hereafter set forth. *Anderson,* 291 Wis. 2d 673, ¶ 114.

¶ 48. This court has articulated several factors to aid in harmless error analysis. These factors include the frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case. *State v. Hale,* 2005 WI 7, ¶ 61, 277 Wis. 2d 593, 691 N.W.2d 637.

¶ 49. In the present case, the improper references in the State's opening statement and case-in-chief to Mayo's pre-Miranda silence were infrequent. The prosecutor's references to Mayo's pre-Miranda silence in her opening statement and during the State's case-in-chief comprise only 7 sentences out of 177 pages of the trial transcript. The infrequency of the references in the context of the entire trial mitigated any possible prejudicial effect on the jury. *Brecht,* 143 Wis. 2d at 318. Examining the importance of the erroneously admitted evidence and the defense's case, *Hale,* 277 Wis. 2d 593, ¶ 61, we are convinced further that the remarks con-

state court criminal trial under the "substantial and injurious effect" standard set forth in *State v. Brecht,* 143 Wis. 2d 297, 307, 421 N.W.2d 96 (1988), whether or not the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California,* 386 U.S. 18, 24 (1967), reh'g denied, 386 U.S. 987 (1967).

cerning Mayo's pre-Miranda silence were not prejudicial to Mayo for several other reasons.

¶ 50. Mayo's decision to testify was not affected by the State's use of his pre-Miranda silence. Before jury selection, defense counsel explained to the court that the only witness to testify for the defense would be Mayo. Then, in his opening statement, defense counsel told the jury that Mayo would be testifying.

¶ 51. Defense counsel did not object to the prosecutor's statements concerning Mayo's pre-*Miranda* silence during the State's opening statement and direct examination of the State's witnesses. Furthermore, Mayo testified at trial that he was not silent when Price identified him to police as the alleged robber. It is clear that the defense presented evidence that contradicted the State's comments and its line of questioning regarding Mayo's pre-*Miranda* silence. Under the circumstances, we conclude that it is " 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error' " and that reversal is not required. *State v. Harvey,* 254 Wis. 2d 442, ¶ 46 (quoting *Neder,* 527 U.S. at 18); *see also Chapman,* 386 U.S. at 24.

¶ 52. The prosecutor also commented on Mayo's pre-*Miranda* silence during closing arguments and on cross-examination of Mayo. As noted previously, the prosecutor's use of Mayo's pre-*Miranda* silence was not improper on these occasions. Pre-*Miranda* silence may be used (1) to impeach a defendant when he or she testifies or (2) substantively to suggest guilt. *Adams,* 221 Wis. 2d at 9. Once the defendant testifies, his or her pre-*Miranda* silence may be used by the prosecutor. By the time of the State's closing arguments, Mayo had testified, and his testimony differed substantially from

the testimony of other witnesses. The prosecutor used Mayo's pre-*Miranda* silence in cross-examining Mayo to impeach him, and in the State's closing argument to suggest guilt, which *Adams* explains is permissible. *Id.*

¶ 53. Mayo also argues that the circuit court erred in allowing Officer Langendorf and Price to testify regarding Price's statements to Officer Langendorf. He argues that such testimony was inadmissible hearsay and that, because it was admitted, the jury was able to hear repeatedly Price's disputed testimony. The State argues that the testimony was properly admitted under the excited utterance exception to the hearsay rule. Wis. Stat. § 908.03(2).[7]

■

¶ 54. We agree with the State's position that Price's out-of-court statements were properly admitted under the excited utterance exception to the hearsay rule. *Id.* In talking to Officer Langendorf, Price was describing a startling event—his encounter with Mayo, during which he claimed that he was robbed and battered. Price testified that he spoke with Officer Langendorf only a few minutes after the event occurred. According to Officer Langendorf, Price was visibly upset and bleeding. Therefore, it is reasonable to conclude that Price made the statement while "under the stress of excitement caused by the event. . . ." Wis. Stat. § 908.03(2).

---

[7] Wisconsin Stat. § 908.03 states in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

¶ 55. As noted previously, we review evidentiary rulings with deference, to determine whether the circuit court properly exercised its discretion in accordance with the facts and accepted legal standards. *Tucker,* 259 Wis. 2d 484, ¶ 28. We are satisfied here that the circuit court properly exercised its discretion when it admitted Price's out-of-court statements under the excited utterance exception to the hearsay rule. Wis. Stat. § 908.03(2).

¶ 56. Mayo argues that he received ineffective assistance of counsel in several respects, which sometimes overlap with other claims of error, including the fact that his attorney did not object to the improper remarks of the prosecutor in her opening statement, and in her closing and rebuttal arguments. Mayo also argues that defense counsel was ineffective because he did not object to the hearsay testimony of Officer Langendorf or Price, and because he did not know the law regarding pre-Miranda silence. Mayo further asserts that he is entitled to a new trial in the interest of justice under Wis. Stat. § 751.06 (2005–06). Mayo argues that defense counsel's failure to object to the prosecutor's comments in her opening statement, and in her closing and rebuttal arguments, prevented the real controversy from being fully tried. *State v. Hicks,* 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). He also argues that, under the circumstances of this case, there has been a miscarriage of justice.

¶ 57. Mayo argues that defense counsel was unprepared, as demonstrated by the fact that he did not corroborate Mayo's testimony even though he had the possibility to do so through McMorris, that he did not impeach Price's testimony because he never ordered a copy of Price's testimony at the preliminary hearing, that he admitted that he did no independent investiga-

tion, that he relied completely upon police reports, that he did not hire an investigator, and that he spoke to no potential witnesses other than Mayo.

¶ 58. The State argues that defense counsel was not ineffective, and that any failures to object were strategic decisions. Regarding defense counsel's failure to corroborate Mayo's testimony with the testimony of McMorris, the State argues that defense counsel, consistent with his testimony at the postconviction motion hearing, chose not to use this testimony in an effort to minimize the November 17, 2002 encounter between Mayo and Price, in favor of emphasizing their November 16, 2002 encounter. The State also argues that defense counsel was not ineffective for failing to impeach Price's testimony. The State asserts that, although Price did give conflicting testimony regarding whether he was with a companion on November 17, the failure to impeach did not prejudice Mayo because the jurors still had good reason from the evidence presented to believe Price and to disbelieve Mayo.

¶ 59. However, we are satisfied that defense counsel's failure to conduct any independent investigation amounted to deficient performance under the circumstances, but Mayo failed to show that there was a reasonable probability that the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. There has been no showing of prejudice here. Lawyers have a duty " 'to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits. . . .' " *Pitsch,* 124 Wis. 2d at 638 (citation omitted). Defense counsel should have asked Mayo if there were any

possible witnesses to the encounters between Mayo and Price, and should have interviewed any potential witnesses.

¶ 60. The Sixth Amendment of the United States Constitution guarantees effective assistance of counsel. *Strickland,* 466 U.S. at 687. Mayo argues that he is entitled to a new trial because his counsel's deficiencies prevented the real controversy from being fully tried. *Hicks,* 202 Wis. 2d at 160. However, the *Strickland* test is the proper test to apply in the context of an ineffective assistance of counsel claim. There are two elements that underlie every claim of ineffective assistance of counsel: first, the person making the claim must demonstrate that his or her counsel's performance was deficient; and second, he or she must demonstrate that this deficient performance was prejudicial. *McDowell,* 272 Wis. 2d 488, ¶ 49; *Strickland,* 466 U.S. at 687. We give "great deference to counsel's performance, and, therefore, a defendant must overcome a strong presumption that counsel acted reasonably within the professional norms." *Trawitzki,* 244 Wis. 2d 523, ¶ 40.

¶ 61. Under the two-pronged test that underlies the claim of ineffective assistance of counsel, we need not address both the performance and the prejudice elements, if the defendant cannot make a sufficient showing as to one or the other element. *State v. Tomlinson,* 2001 WI App 212, ¶ 40, 247 Wis. 2d 682, 635 N.W.2d 201. *See also State v. Roberson,* 2006 WI 80, ¶ 28, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted)("[C]ourts may decide ineffective assistance claims based on prejudice without considering whether the counsel's performance was deficient). In *State v. Thiel,* 2003 WI 111, 59, 264 Wis. 2d 571, 665 N.W.2d

305, we stated that prejudice should be assessed based on the cumulative effect of counsel's deficiencies.

¶ 62. As noted, we are satisfied that, in failing to conduct any independent investigation, defense counsel was deficient. As an example, if defense counsel had fully investigated the case, the defense could have been in a position to present possible corroboration testimony from an additional potential witness, McMorris. McMorris testified at the postconviction motion hearing on April 29, 2004, that she saw Mayo after the alleged altercation between Mayo and Price on November 17, 2002. She testified that Mayo had blood on the palm of his hand, and that Mayo told her that Price had tried to "jump" him and tried to hit him with a tire iron. However, it is important to note that McMorris was not an eyewitness to the altercation between Mayo and Price and, therefore, could not have provided testimony on what actually occurred during such altercation. We cannot speculate as to whether there were other potential witnesses that may have been discovered through an investigation by defense counsel, and what they would have said, since such potential testimony was not presented to the court.

¶ 63. Defense counsel was not deficient, however, for failing to object to the prosecutor's improper remarks during closing arguments, the use of pre-Miranda silence, or the hearsay evidence properly admitted as an excited utterance. Defense counsel's lack of objections on these matters was found by the circuit court to involve defense strategy, which this court will not now second-guess. *Strickland,* 466 U.S. at 689.

¶ 64. On balance, we are satisfied, viewing the deficiencies of defense counsel and the incidents of

prosecutorial misconduct individually and for the cumulative effect,[8] that Mayo has not established that there was a reasonable probability that the result would have been different. *Strickland,* 466 U.S. at 694. In order to show prejudice under *Strickland,* the defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. *See also State v. Gordon,* 2003 WI 69, ¶ 22, 262 Wis. 2d 380, 663 N.W.2d 765. Looking at the entire trial in light of the *Strickland* formulation of prejudice, Mayo's trial was not so infected with error as to amount to a deprivation of his right to a fair trial. The result reached by the jury was reliable. The jurors had the opportunity to listen to the testimony of Price and Mayo, and to determine the credibility of each of them. Certainly, the focus in this case was on the testimony of those two witnesses and, obviously, the jury believed Price and rejected the testimony of Mayo. We hold, therefore, that Mayo has not shown that defense counsel's deficient performance was prejudicial, so as to warrant a new trial. *McDowell,* 272 Wis. 2d 488, ¶ 49.

## IV

¶ 65. We hold that, although there was improper prosecutorial argument in this case, such misconduct

---

[8] Federal cases have not limited the cumulative error test to the errors of defense counsel; rather, they have applied or expressed a willingness to apply the cumulative error test to all types of errors. *See, e.g., Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000); *U.S. v. Rivera,* 900 F.2d 1462, 1469 (10th Cir. 1990); *U.S. v. Wallace,* 848 F.2d 1464, 1472 (9th Cir. 1988). This court relied on federal cases in adopting the cumulative error analysis in *State v. Thiel,* 2003 WI 111, ¶¶ 59, 60, 62, 81, 264 Wis. 2d 571, 665 N.W.2d 305.

did not so infect the trial with unfairness as to constitute a denial of Mayo's due process rights, thus warranting a new trial, either due to plain error or in the interest of justice. He has not shown that the real controversy was not fully tried, nor has he established that there was a miscarriage of justice. There is not a substantial probability of a different result, even if a new trial were held.

¶ 66. We further hold that the circuit court properly admitted testimony concerning Price's out-of-court statements to the police, under the excited utterance exception to the hearsay rule. Wis. Stat. § 908.03(2). Finally, we hold that, although defense counsel rendered deficient performance by failing to conduct an independent investigation, Mayo has not established that there was a reasonable probability that the result would have been different. *Strickland,* 466 U.S. at 694. Mayo was not prejudiced by such deficient performance. On balance, we are satisfied, viewing the deficiencies of defense counsel and the incidents of prosecutorial misconduct for their cumulative effect, that Mayo is not entitled to a new trial and, therefore, the decision of the court of appeals is affirmed.

¶ 67. *By the Court.*— The decision of the court of appeals is affirmed.

¶ 68. LOUIS B. BUTLER, JR., J. (*concurring*). A unanimous court concludes that defense counsel's failure to conduct any independent investigation amounted to deficient performance under the circumstances. Majority op., ¶¶ 3, 59, 62, 66. *See also* Chief Justice Abrahamson's dissent, ¶¶ 89, 91, 95, 106. At issue is whether the defendant has shown that counsel's deficiency prejudiced the defense. *Wiggins v. Smith,* 539 U.S. 510, 521 (2003). "The defendant must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 694 (1984).

¶ 69. Because the defendant has failed to show that a reasonable probability exists that the result of the proceeding would have been different,[1] I join the majority opinion. That does not mean that I agree that defendant has not been prejudiced here; he has. His attorney admitted that he did no independent investigation. Potential witnesses have thus been forever lost. Absent any additional witnesses, defendant has consequently failed to meet his requisite burden of showing the level of prejudice needed to overturn the conviction. I write separately because this case illustrates the difficulties this court has in determining whether the defendant can ever show the requisite amount of prejudice necessary to overturn a conviction when a defense attorney fails to investigate the case, and potential evidence favorable to the defense is forever lost.

¶ 70. The United States Supreme Court has recognized that the American Bar Association Standards for Criminal Justice regarding a lawyer's duty to investigate provide as follows:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admis-

---

[1] Majority op., ¶ 59.

sions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

*Rompilla v. Beard,* 545 U.S. 374, 387 (2005) (quoting 1 ABA Standards for Criminal Justice 4–4.1 (2d ed. 1982 Supp.)). *See also State v. Love,* 2005 WI 116, ¶ 40, 284 Wis. 2d 111, 700 N.W.2d 62. Applying that standard, the United States Supreme Court has held counsel's performance in a capital sentencing proceeding to be deficient where counsel failed to examine a defendant's prior conviction file or transcript of the victim's testimony. *Rompilla,* 545 U.S. at 389–90. Similarly, the Court has held counsel's performance to be deficient in a capital sentencing proceeding where counsel, without a strategic basis for the decision, failed to look beyond the presentence investigation report and Department of Social Service records for mitigating evidence. *Wiggins,* 539 U.S. at 527–28, 532–34.

¶ 71. In both cases, the United States Supreme Court held that counsel's deficient performance was also prejudicial. Critical to the majority's determination of prejudice in this case is *why* the United States Supreme Court reached that conclusion.

¶ 72. In *Wiggins,* the mitigating evidence that counsel failed to investigate was described by the Court as "powerful." 539 U.S. at 534. Defendant presented postconviction testimony concerning an elaborate social history report a licensed social worker had prepared containing evidence of physical torment, sexual molestation and repeated rape defendant suffered at the hands of his mother and while in the care of a series of foster parents. *Id.* at 516, 535. The report also documented that he was homeless for a period, and had diminished mental capacities. *Id.* at 535. The Court concluded that had the jury been able to place the

defendant's "excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance." *Id.* at 537.

¶ 73. Similarly, in *Rompilla,* defense counsel at trial failed to investigate "pretty obvious signs" that defendant had a troubled childhood and suffered from mental illness and alcoholism, relying instead on defendant's own description of an unexceptional background. 545 U.S. at 379. Postconviction counsel pointed out that trial counsel never examined school records, juvenile and adult incarceration records, or evidence of a history of alcohol dependence, and failed to examine the court file of defendant's prior conviction, which included the transcript of the victim's testimony. *Id.* at 382–83. This latter point the court found dispositive. *Id.*

¶ 74. The Court concluded that had defense counsel looked at the prior conviction file, "it is uncontested they would have found a range of mitigation leads that no other source had opened up." *Id.* at 390. The files contained an evaluation that showed defendant had a history of alcohol abuse, showed indications of schizophrenia and other mental disorders, and was tested at a third-grade level of cognition after nine years of schooling. *Id.* at 390–91. The file further showed that defendant's parents were both chronic alcoholics; that his father had a vicious temper and frequently beat defendant's mother; that his parents fought violently, his mother once stabbing his father; and that his father beat him when he was young with leather straps, belts and sticks. *Id.* at 391–92. The file further showed that the defendant and his brother were locked in a small wire mesh dog pen that was filthy and excrement filled,

and that the defendant was not allowed to visit other children or talk to anyone on the phone. *Id.* at 392.

¶ 75. The jury never heard this evidence. *Id.* Postconviction counsel, on the other hand, used this information never seen by trial counsel to do further testing of the defendant. *Id.* The Court concluded that the undiscovered mitigating evidence might well have influenced the jury's appraisal of defendant's culpability. *Id.* at 393.

¶ 76. In both *Wiggins* and *Rompilla,* postconviction counsel presented the evidence that would have made a difference in the outcome of the earlier proceeding that was not discovered because trial counsel failed to conduct an adequate investigation. Thus, the Court did not have to speculate as to what the undiscovered evidence might have shown in assessing the prejudice prong of *Strickland.*

¶ 77. We have similarly held that a postconviction motion in an ineffective assistance of counsel setting must allege material facts that allow a reviewing court to meaningfully assess defendant's claims. *Love,* 284 Wis. 2d 111, ¶ 27. A postconviction motion will be sufficient if it alleges within the four corners of the motion "the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." *Id.* (quoting *State v. Allen,* 2004 WI 106, ¶ 23, 274 Wis. 2d 568, 682 N.W.2d 433). Applying that standard, we concluded that where defense counsel failed to investigate a phone call from the county jail to defendant's mother from an identified individual claiming to have knowledge of the robbery defendant was convicted of, those alleged facts, if true, would entitle defendant to relief. *Id.,* ¶¶ 22, 39–42. Our approach is therefore consistent with that which was taken in *Wiggins* and *Rompilla.* Postconviction counsel presented the missing evidence that trial counsel failed

to investigate, giving the appellate court the ability to assess the damage done by trial counsel's deficient performance. We are simply not in a position to speculate about the existence of witnesses that have not been identified, and what these witnesses might have said if defense counsel had discovered these witnesses by conducting a proper investigation prior to trial. *See* majority op., ¶ 62.

¶ 78. So what does that leave us with here? As the Chief Justice points out, we have a "he-said-he-said" case. Chief Justice Abrahamson's dissent, ¶ 99. The victim testified that he was robbed of 35 dollars at gunpoint by defendant Mayo. Mayo, on the other hand, testified that the victim shorted him in a drug deal gone bad, and that when the victim refused to return Mayo's 35–dollar purchase price, Mayo struck, kicked and stomped the victim while getting his money back. Price and Mayo also gave conflicting stories about what had occurred the next day outside a taco restaurant concerning whether the victim and a companion had attacked Mayo with a tire iron. No one other than these two testified. The testimony of additional witnesses who may have seen either of the altercations between Mayo and Price may well have affected the outcome in this "he-said-he-said" case.

¶ 79. Unfortunately, trial counsel did not speak to the victim's friend named Jarrell or Jarrell's mother, even though the victim went to Jarrell's house just after the robbery, as the robbery occurred nearby. Trial counsel never interviewed anyone that might have been at the restaurant the next night when the tire iron incident occurred. Trial counsel admitted that he conducted no independent investigation, did not hire an investigator, and spoke to no potential witnesses other than Mayo.

¶ 80. Appellate counsel was unable to produce any witnesses at the postconviction hearing who could testify about the events surrounding the robbery. While appellate counsel did produce a potential witness, McMorris, concerning the altercation that occurred the night after the robbery, McMorris did not see that altercation, and merely had information provided to her by Mayo as to what he told her that night. Thus, unlike the situations presented in *Love, Wiggins* and *Rompilla,* we are left to speculate about whether potential witnesses to the robbery exist and what they might say.

¶ 81. The net effect of trial counsel's failure to investigate is that Mayo was ultimately deprived of any opportunity to mount a credible defense. In my view, that amounts to prejudice. Yet I agree with the majority that the prejudice incurred does not meet the standard required for a new trial under *Strickland.* The result in this case, while legally correct, should disturb us all.

¶ 82. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). This trial was a contest of the credibility of the only two witnesses to the street encounter: the defendant and the complaining witness. This was a classic instance of "he-said-he-said."

¶ 83. As the prosecutor correctly argued to the jury, "Basically what this case comes down to is credibility. Is Clarence Price [the complaining witness] more credible or is Thomas Mayo [the defendant] more credible?"

¶ 84. The defendant and the complaining witness both testified. They agreed that there was an altercation. They disagreed, however, about what happened during the encounter. The defendant asserted that it was a drug deal gone bad. The complaining witness asserted that it was an unprovoked robbery. Each man

had a felony record. The jury had no independent confirmation of either man's competing account of the encounter.

¶ 85. Credibility determinations are for the jury. The problem is that the credibility determinations in the present case were made in a trial awash with errors and improper conduct by the defense counsel and by the prosecuting attorney, as the majority opinion carefully explains.

¶ 86. I agree with the majority opinion that the multiple errors of both the defense counsel and the prosecutor must be viewed cumulatively, that is in the aggregate, to determine whether the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[1]

¶ 87. The majority opinion and the State conclude that the errors and improper conduct were not sufficient to warrant a new trial under any of the three doctrines that protect a fair trial against trial errors: plain error (Wis. Stat. § 901.03(4)), interest of justice (Wis. Stat. § 751.06), or prejudicial error (Wis. Stat. § 805.18). I disagree with the majority opinion and conclude that the cumulative errors affected the entire evidentiary picture and directly and substantially affected the credibility contest.

¶ 88. The errors the defendant and majority opinion identify can be grouped into three overlapping and interrelated categories: (I) ineffective assistance of defense counsel; (II) improper statements by the prosecutor; and (III) improper admission of hearsay testimony.

¶ 89. The majority opinion concludes that there was deficient defense counsel performance and errone-

---

[1] Majority op., ¶ 33 (quoting *Strickland v. Washington,* 466 U.S. 668, 687 (1984), ¶ 64.

ous prosecutorial conduct. Although I might have concluded that the defense counsel and prosecutor erred in more ways than the majority opinion identifies, for purposes of this dissent, I accept the majority opinion's conclusions about what conduct was erroneous. The majority opinion also concludes that the hearsay testimony was admissible under the excited utterance exception to the hearsay rule. Majority op., ¶ 54. I accept this conclusion for purposes of this dissent. In light of the other errors the majority opinion identifies, the hearsay ruling and other instances in which the majority opinion finds no error are ultimately irrelevant in my analysis.

¶ 90. In contrast to the majority opinion, I conclude that the cumulative, interrelated errors (as identified by the majority opinion) were pervasive and so infected the jury's credibility determination that the aggregate errors undermine confidence in the verdict. A new trial is warranted regardless of which test is used and regardless of whether the State or the defendant has the burden of proof of prejudicial error.[2]

## I

¶ 91. The majority opinion concludes that various aspects of defense counsel's conduct fell below the objective constitutional standard for effective assistance of counsel in several respects, all of which amount to defense counsel's complete failure to conduct any

---

[2] For discussions of alternative ways of stating harmless error tests and of different tests for different errors, *see, e.g.,* *State v. Hale,* 2005 WI 7, ¶ 60, n.9, ¶¶ 79–85, 277 Wis. 2d 593, 691 N.W.2d 637 (Abrahamson, C.J., concurring); *id.,* ¶¶ 85–90 (Wilcox, J. concurring); *id.,* ¶¶ 100–18 (Butler, J., concurring); *State v. Harvey,* 2002 WI 93, ¶¶ 50–54, 254 Wis. 2d 442, 647 N.W.2d 189 (Crooks, J., concurring); *id.,* ¶¶ 55–77 (Abrahamson, C.J., dissenting).

independent investigation (but were not prejudicial). Defense counsel's deficient performance as acknowledged by the majority opinion is as follows:

(1) Defense counsel failed to conduct any independent investigation and failed to interview any potential witnesses, relying completely and solely on the police reports and defense counsel's conversations with the defendant. Majority op., ¶¶ 3, 57, 59, 62.

(2) Subsumed under defense counsel's failure to investigate is the defense counsel's failure to obtain the complaining witness's sworn testimony at the preliminary hearing, which might have been used to impeach the complaining witness.

(3) Had defense counsel investigated he would have been in a position to present possible corroboration testimony from an additional witness, McMorris. Majority op., ¶ 62.

¶ 92. The Sixth Amendment right "to have the Assistance of Counsel" is the right to effective assistance of counsel.[3] Effective assistance of counsel requires "an adequate investigation of the facts of the case, consideration of viable theories, and development of evidence to support those theories."[4] Since *Strickland v. Washington,* 466 U.S. 668 (1984), the seminal case on ineffective assistance of counsel, the United States Supreme Court has become more exacting in analyzing investigatory failures.[5]

---

[3] *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970)).

[4] *Henderson v. Sargent,* 926 F.2d 706, 711 (8th Cir. 1991).

[5] Jenny Roberts, *Too Little, Too Late: Ineffective Assistance of Counsel, The Duty to Investigate, and Pretrial Discovery in Criminal Cases,* 31 Fordham Urb. L. J. 1097, 1110–11, 1114–15 (2004).

¶ 93. The type and intensity of the investigation defense counsel conducts varies from case to case, and the court generally defers to counsel's judgment.[6] Nevertheless, this court has held that defense "counsel's lack of any significant independent investigation falls outside of this wide spectrum" of representation and preparation.[7] The United States Supreme Court has similarly declared that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659 (1984).

¶ 94. This court has approved of and adhered to Standard 4–4.1 of the ABA Standards for Criminal Justice, The Defense Function (approved draft 1971, 2d ed. 1982, 3d ed. 1993), which imposes an unequivocal duty on defense counsel to conduct "a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case . . . ." This duty to investigate exists "regardless of the accused's admission or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty." For cases referring to the duty-to-investigate standard with approval, see, *e.g., State v. Love*, 2005 WI 116, ¶ 40, 284 Wis. 2d 111, 700 N.W.2d 62; *State v. Pitsch*, 124 Wis. 2d 628, 638, 369 N.W.2d 711

---

[6] *Strickland v. Washington*, 466 U.S. 668, 689–91 (1984) (recognizing the "wide latitude counsel must have in making tactical decisions" and that "strategic choices made after less than complete investigation" may be reasonable if "reasonable professional judgments support the limitations on investigation").

[7] *State v. Thiel*, 2003 WI 111, ¶ 45, 264 Wis. 2d 571, 665 N.W.2d 305.

(1985); *State v. Felton,* 110 Wis. 2d 485, 501, 329 N.W.2d 161 (1983); *Roe v. State,* 95 Wis. 2d 226, 238–39, 290 N.W.2d 291 (1980); *State v. Bowie,* 92 Wis. 2d 192, 206, 284 N.W.2d 613 (1979); *State v. Harper,* 57 Wis. 2d 543, 552–53, 205 N.W.2d 1 (1973).

¶ 95. The record in the present case is clear: There was absolutely no investigation on behalf of the defendant. Defense counsel conceded this point. Majority op., ¶ 57. The majority opinion acknowledges this point. Majority op., ¶¶ 3, 57, 59, 62. This deficiency, however, was not a matter of trial strategy. A lawyer cannot make a rational decision about a defense without first investigating. All of defense counsel's errors in failing to investigate were clear error.

¶ 96. We now turn to the question whether the defense counsel's numerous errors in failing to investigate the case require a new trial. The majority opinion subjected the claims of ineffective assistance of counsel to a cumulative error analysis, examining whether, when taken as a whole, defense counsel's deficiencies prejudiced the defendant. Majority op., ¶ 64. I agree with the cumulative error approach; I disagree with the majority's conclusion that the defendant was not prejudiced.

¶ 97. In the present case, defense counsel's total failure to investigate may be viewed as effectively denying the defendant assistance of counsel. Under this analysis, no prejudice need be shown, and no harmless error test need be applied.[8] The defendant should get the relief sought: a new trial.

---

[8] *See, e.g., King v. State,* 810 P.2d 119, 123 (Wyo. 1991) (presuming prejudice when defense counsel failed to secure trial testimony of two potential eyewitnesses).

¶ 98. If, however, the *Strickland* prejudicial error standard is applied to defense counsel's failure to investigate in the present case, the focus of the inquiry regarding whether counsel's constitutionally deficient performance is prejudicial is not on the outcome of the trial, but on "the reliability of the proceedings."[9]

¶ 99. The State's "he-said-he-said" case was weak. Defense counsel's failure to investigate affected the entire evidentiary picture and directly and substantially affected the credibility contest between the defendant and the complaining witness. Under the total circumstances of this case, defense counsel's deficient performance undermined the reliability of the proceedings. Defense counsel's failure to investigate therefore constitutes prejudicial error in the present case.

## II

¶ 100. Although the defendant is, in my opinion, entitled to a new trial on the basis of the errors of defense counsel alone, I turn next to discuss the other errors that infected the trial.

¶ 101. In addition to the errors of the defense counsel, the majority opinion concludes that the prosecutor also committed errors. The prosecutor's errors are described in the majority opinion as follows:

(1) In her opening statement the prosecutor infringed upon the defendant's federal (Fifth Amendment) and state (Art. I, § 8) constitutional right to remain silent by calling attention to the fact that the

---

[9] *State v. Pitsch,* 124 Wis. 2d 628, 642, 369 N.W.2d 711 (1985), *quoted with approval in State v. Thiel,* 2003 WI 111, ¶ 20, 264 Wis. 2d 571, 665 N.W.2d 305. *See also* majority op., ¶ 64.

defendant remained silent after being accused of robbery. Majority op., ¶¶ 3, 46.[10]

(2) In questioning the State's witnesses during the case-in-chief, the prosecutor repeatedly infringed upon the defendant's federal (Fifth Amendment) and state (Art. I, § 8) constitutional right to remain silent by calling attention to the fact that the defendant remained silent after being accused of robbery. Majority op., ¶¶ 3, 46.[11]

(3) During closing argument, the prosecutor made improper comments regarding the role of defense counsel when she said that it was defense counsel's job to "get his client off the hook," and "not to see justice done but to see that his client was acquitted." Majority op., ¶¶ 3, 42, 43.

(4) During closing argument, the prosecutor improperly told jurors that her job was to examine police reports, to decide whether to file charges, and to decide whether to dismiss charges if she thought the charges were unjust or untrue. The prosecutor's comments can be found at majority op., ¶ 16. The prosecutor's reference to her quasi-judicial task of filing charges amounted to the improper discussion by counsel of materials not in evidence and therefore exceeded the scope of proper argument. Majority op., ¶ 41.

---

[10] At oral argument the State conceded that the prosecutor's remarks regarding the defendant's pre-*Miranda* silence during her opening statement were improper. Majority op., ¶ 40.

The majority opinion concludes that defense counsel's failure to object to the improper comments of the prosecutor during closing argument and the prosecutor's use of pre-*Miranda* silence was acceptable defense trial strategy. Majority op., ¶ 63.

[11] At oral argument the State conceded that the prosecutor's remarks regarding the defendant's pre-*Miranda* silence during direct examination of the State's witnesses were improper. Majority op., ¶ 40.

690

¶ 102. These prosecutorial errors affected the jury's view of the defendant and his version of the incident. By stressing the defendant's silence in the face of accusations, the prosecutor wanted the jury to infer that the defendant is guilty: an innocent person would have denied the charge.

¶ 103. In her closing statement the prosecutor painted an ugly portrait of defense counsel relentlessly focused on procuring a "not guilty" verdict at all costs. The logical implication of the prosecutor's remarks was don't trust defense counsel, don't trust the evidence defense counsel offered, and don't trust the defendant.

¶ 104. In contrast, the prosecutor presented herself as prosecuting only cases in which the complaining witness offered a reliable rendition of events. The prosecutor wanted the jury to infer that she would not have brought this case if she didn't believe the complaining witness and that because the prosecutor believes the complaining witness, the jury should as well.

¶ 105. In short, the prosecutor's improper conduct was designed to and did attack the credibility of the defendant and underscored the complaining witness's credibility. In a case like the instant one, where the credibility of the defendant and the complaining witness determines guilt, the prosecutor's errors were grave indeed.

¶ 106. The prosecutor's improper conduct was exacerbated by the defense counsel's deficient performance in failing to investigate, in failing to present a corroborating witness, in failing to procure the testimony of the complaining witness at the preliminary examination to use for impeachment purposes, and in failing to object when the prosecutor erred.

¶ 107. When I consider the centrality of the credibility contest and the defense counsel's and the

prosecutor's errors in the aggregate, I am troubled, as was the Ninth Circuit Court of Appeals in a similar case, by the possible cumulative effect of those errors which go to the credibility of the defendant and the complaining witness. In the context of the present case and considering the entire record, I cannot conclude "that a balkanized, issue-by-issue harmless error review would be very enlightening in determining whether the [defendant was] prejudiced by the errors." *United States v. Wallace,* 848 F.2d 1464, 1476 (9th Cir. 1988).

¶ 108. I conclude that under the proper application of the cumulative error test, the multiple errors of the defense counsel and the prosecutor undermine confidence in the outcome of the trial and denied the defendant of his right to a fair trial.

¶ 109. For the reasons set forth, I conclude that a new trial is warranted, and therefore I dissent.