COURT OF APPEALS
DECISION
DATED AND FILED

July 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      2024AP217-CR

STATE OF WISCONSIN

Cir. Ct. No.  2019CF2207

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

RICHARD L. BURWITZ,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dane County: ELLEN K. BERZ, Judge.  *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Richard Burwitz was involved in a car accident that injured another motorist.  An officer noticed that Burwitz appeared to be confused,

and the officer also noticed that Burwitz was exhibiting other possible signs of impairment. Testing of Burwitz's blood showed that he had three prescription medications in his system, two of which were present in amounts above the therapeutic range. A jury found Burwitz guilty of operating a motor vehicle while under the influence of a drug, as a fifth or sixth offense, and also of operating a motor vehicle under the influence of a drug, causing injury, as a second or subsequent offense.

¶2 Burwitz appeals the judgment of conviction and the circuit court order denying his motion for postconviction relief. He argues that trial counsel was constitutionally ineffective in two ways: first, by not developing a defense theory, supported by expert testimony, that his confusion could have been due to a head injury from the accident; and second, by not introducing expert testimony to explain that there is no relationship between a medication's therapeutic range and impairment.

¶3 We conclude that Burwitz has not met his burden to show that counsel performed deficiently in either respect, and therefore, that Burwitz has not shown that counsel was constitutionally ineffective. We affirm the judgment of conviction and the order denying postconviction relief.

### Background

¶4 Burwitz struck and injured the other motorist while driving on a highway during a snowstorm. An officer who responded to the scene did not smell alcohol on Burwitz but suspected that he might be impaired based on other observations. The officer noticed that Burwitz's responses to questions were "very delayed" and that Burwitz was confused about basic facts such as the time of day and the direction that he had been driving. Additionally, the officer observed that

2

Burwitz had "very droopy" eyelids, slurred speech, and pupils that were smaller than normal for light conditions.

¶5 The officer asked Burwitz if he was taking any prescription medications. Burwitz replied that he was taking oxycodone for pain control, alprazolam for anxiety, and a third medication.

¶6 An EMT asked Burwitz about symptoms he might be experiencing. Burwitz indicated that he was experiencing head and neck pain, but that his pain was due to prior injuries. As discussed further below, it appears that Burwitz received no further medical treatment for any injuries that he might have suffered in the accident.

¶7 Police were unable to administer a complete set of standard field sobriety tests on Burwitz due to his prior injuries. However, they administered the horizontal gaze nystagmus test, and an officer determined that Burwitz exhibited two of six "clues" of intoxication on that test.

¶8 The police arrested Burwitz for operating a motor vehicle while under the influence, and Burwitz submitted to a chemical test of his blood. Testing of his blood showed that he had three drugs in his system: oxycodone, alprazolam, and cyclobenzaprine. Burwitz had a prescription for each of those drugs.

¶9 At trial, a chemist with the Wisconsin State Laboratory of Hygiene testified that Burwitz's blood contained these three medications and that two of them—the alprazolam and the cyclobenzaprine—were present in amounts above the therapeutic range. Specifically, Burwitz's blood contained 170 nanograms per milliliter of oxycodone, with the therapeutic range being less than 200 nanograms per milliliter; 72 nanograms per milliliter of alprazolam, with the therapeutic range

being 20 to 60 nanograms per milliliter; and 170 nanograms per milliliter of cyclobenzaprine, with the therapeutic range being less than 50 nanograms per milliliter.

¶10     The chemist also testified that, given the combination of medications in Burwitz's system, "certainly the potential exists for impairment." Additionally, the chemist testified that oxycodone can cause sedation and pinpoint-sized pupils; that alprazolam can cause difficulties with perception, judgment, and coordination, as well as droopy eyelids and slurred speech; and that cyclobenzaprine can cause difficulties with perception, judgment, and coordination.

¶11     Under cross-examination by Burwitz's counsel, the chemist acknowledged that she could not offer an opinion on whether the amounts of medications in Burwitz's system showed that he was impaired. The chemist also acknowledged that she would be unable to offer such an opinion "without examining Mr. Burwitz, his history, and his other personal characteristics," and that she could not testify to "exactly what the impairment might be" without having observed his driving performance at the time of the accident.

¶12     The chemist further testified that individual tolerances to medications vary, and that such variances are one reason why impairment cannot be determined based only on the amount of medication present in someone's system. More specifically, the chemist testified that "if an individual takes medication as prescribed by their doctor and is taking them regularly as compared to as needed, yes, they do develop a tolerance and that's why one cannot say from a number on a report what an individual's impairment might be."

¶13     Burwitz testified. He appeared to suggest that his confusion was due to a head injury that he suffered in the accident. He testified about having a "[b]rain

concussion" and about his brain being "scrambled," possibly due to a "smash" to his head when the accident occurred. He also testified that he had been taking the medications found in his system for decades.

¶14 During closing arguments, the State argued that Burwitz's confusion at the scene of the accident, among other factors, showed that he was driving while impaired. The State also argued that the combination of medications in Burwitz's system, including the two medications that were above the therapeutic range, indicated that Burwitz was impaired.

¶15 As conveyed by defense counsel, Burwitz's primary defense was that the accident was due to the snowstorm and the resulting poor road conditions, rather than impairment from medications. Counsel also sought to imply that Burwitz's confusion was due to the accident itself: counsel highlighted the seriousness of the accident and asserted that it must have been "extremely disorienting" for Burwitz, and counsel also pointed to testimony that counsel had elicited from a police officer that motorists involved in car accidents are often "shaken up" afterward. However, counsel stopped short of asserting that Burwitz suffered a head injury. Finally, counsel argued that Burwitz had been taking his prescription medications for so long that the medications would not have had the same effect on him as on someone new to the medications.

¶16 After sentencing, Burwitz filed a postconviction motion arguing that trial counsel was ineffective by not introducing expert testimony to show that Burwitz's confusion could have been due to a head injury and that the amounts of medications in his system did not show impairment. The circuit court held a

*Machner*[1] hearing, and Burwitz called three witnesses to testify: a physician specializing in emergency medicine, a toxicologist, and Burwitz's trial counsel. We provide additional detail about the postconviction testimony as needed in the discussion below.

¶17    The circuit court denied Burwitz's postconviction motion, and Burwitz now appeals.

## *Discussion*

¶18    To show ineffective assistance of counsel, a defendant must establish both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address "both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

¶19    Whether a defendant has received ineffective assistance of counsel is a mixed question of law and fact. *State v. Mayo*, 2007 WI 78, ¶32, 301 Wis. 2d 642, 734 N.W.2d 115. "The circuit court's findings of fact … will be upheld unless they are clearly erroneous." *Id.* "Whether counsel's performance was deficient and prejudicial to [the] defense is a question of law that we review de novo." *Id.*

¶20    Here, for the reasons that follow, we conclude that both of Burwitz's ineffective assistance claims fail because he has not established that counsel's performance was deficient in connection with either claim.

¶21    To establish deficient performance, a defendant must show that "counsel's representation fell below an objective standard of reasonableness."

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

*Strickland*, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

### A. Defense Theory that Burwitz's Confusion Could Have Been Due to a Head Injury

¶22 Burwitz first argues that counsel was ineffective by not developing a defense theory, supported by expert testimony, that his confusion could have been due to a head injury from the accident. He argues that it was predictable that the State would argue that Burwitz's confusion showed that he was impaired by his medications, and that this was a critical part of the State's case.

¶23 According to Burwitz, counsel should have countered the State's argument by developing the defense that his confusion could have been due to a head injury.

¶24 As support for his argument, Burwitz points to the opinions offered by the emergency medicine physician at the *Machner* hearing. The physician offered the following opinions: that Burwitz's apparent confusion after the accident was a "concerning" indicator that he needed further medical evaluation for a possible head injury; that Burwitz was not properly assessed for a concussion or other head injury; that Burwitz could have struck his head on the "A pillar" of his car, resulting in a brain injury; and that memory loss and amnesia are associated with concussions.

7

¶25 Burwitz argues that, had these opinions been offered at trial, it would have established that his confusion was consistent with a head injury. It would have also established that a head injury could not be ruled out as the source of his confusion because he did not receive proper medical treatment after the accident.

¶26 Burwitz also points to parts of trial counsel's testimony at the *Machner* hearing. Counsel testified that a head injury defense would not have been inconsistent with the primary defense theory that Burwitz lost control of his car due to the weather conditions, and that "a more thorough job would have explored [that defense] as a possibility as a defense strategy." Counsel also testified that one reason he did not pursue the head-injury defense was because of his own experience with a head injury and his belief, based on that experience and his assessment of Burwitz's affect and level of recollection, that Burwitz had not suffered a head injury. Burwitz argues that counsel's reliance on his personal experience and lay opinion regarding head injuries was not reasonable.

¶27 Burwitz's arguments do not persuade us that counsel performed deficiently by failing to develop and pursue a head injury defense. We conclude instead that counsel's approach was objectively reasonable based on the combination of four main factors.

¶28 First, the opinions offered by the physician expert at the *Machner* hearing failed to provide an innocent explanation for most of the significant indicators of impairment that Burwitz exhibited after the accident. These indicators, as referenced above, included Burwitz's "very droopy" eyelids, his slurred speech, his constricted pupils, and the "clues" of intoxication that police observed on a field sobriety test. Had the physician opined that these indicators of impairment could have instead been symptoms of a head injury, our analysis might be different.

¶29 The second significant factor is the speculative nature of the head injury defense that Burwitz now advances. The physician expert acknowledged that he could not offer an opinion to a reasonable degree of professional certainty that Burwitz suffered a head injury. Similarly, the circuit court found that there was no medical evidence to show that Burwitz suffered a head injury. Burwitz does not establish that this finding is clearly erroneous or that he received medical treatment at any time that could have established that he had a head injury. Although this lack of treatment left open the possibility that he had suffered an undiagnosed head injury, it also apparently meant that there was not a viable means for the defense to prove that he suffered a head injury.

¶30 Burwitz emphasizes that it was not his burden to prove that he had a head injury; rather, it was the State's burden to prove beyond a reasonable doubt that he was impaired by his medications. He argues that a head injury defense could have helped him create reasonable doubt in the mind of the jurors. These are valid points, as far as they go. However, the extent to which an unexplored defense is speculative is nonetheless relevant in assessing counsel's performance. The more speculative the defense would have been, the less likely it is to create a reasonable doubt, and the less likely it is that counsel performs deficiently by failing to raise the defense.

¶31 The third significant factor is testimony by counsel at the *Machner* hearing that Burwitz now downplays or ignores. Counsel testified that, although he and Burwitz talked about what happened on the night of the accident prior to trial, Burwitz never told counsel that he believed he might have suffered a head injury from the accident or that he believed that his confusion might be due to a head injury. In other words, it appears to have been a surprise to counsel at trial that

Burwitz suspected that he had suffered a head injury and would be willing to testify as to that suspicion.

¶32 To be sure, counsel could have explored this potential defense, even in the absence of any pretrial assertion by Burwitz that he had suffered a head injury. However, Burwitz's assertions to counsel are a relevant factor in assessing whether counsel performed deficiently. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Further, although it might have been ideal if counsel had explored the defense, "[w]e do not look to what would have been ideal, but rather to what amounts to reasonably effective representation." *State v. McMahon*, 186 Wis. 2d 68, 80, 519 N.W.2d 621 (Ct. App. 1994).

¶33 Fourth and finally, counsel advanced other defenses that were reasonable under the circumstances. Counsel plausibly argued that the accident was due to the extreme weather conditions rather than Burwitz's alleged impairment. Additionally, counsel challenged the State's reliance on Burwitz's confusion by highlighting the serious nature of the accident and asserting that the accident must have been disorienting for Burwitz.

### B. Expert Testimony to Explain that There Is No Relationship Between Therapeutic Range and Impairment

¶34 Burwitz next argues that counsel was ineffective by not introducing expert testimony to explain that there is no relationship between the therapeutic range of a medication and impairment. As support for this argument, Burwitz points to the opinions offered by his toxicologist expert at the *Machner* hearing.

¶35 The toxicologist offered the following opinions: "therapeutic range" is simply "a generalized range where most people are going to be found" when

taking a medication; someone could be above the "therapeutic range" at any given time because of the timing of when they took a medication or because their doctor prescribed a higher dosage than the normal therapeutic range; and there is no relationship between "therapeutic value" and impairment.

¶36 Burwitz argues that offering these expert opinions at trial would have countered the prosecution's predictable reliance on the indisputable fact that Burwitz had two medications in his system in amounts above the therapeutic range. He also argues that these opinions would have filled a gap left by the testimony of the State chemist, who did not explain that therapeutic range has no relationship to impairment. He contends that, without this explanation, the jury could easily have been misled to believe that impairment occurs above the therapeutic range, but *with* this explanation, he could have argued that the testimony about the therapeutic range was a red herring.

¶37 Burwitz's arguments do not persuade us that counsel performed deficiently by failing to introduce the expert opinions that he identifies. We instead agree with the State that Burwitz fails to show deficient performance on this ground for two main reasons.

¶38 First, counsel was able to elicit substantially similar testimony from the State's chemist at trial. As noted above, the chemist acknowledged that: she could not offer on opinion on whether the amounts of medications in Burwitz's system showed that he was impaired; she could not offer such an opinion without taking into account Burwitz's individual characteristics; and any given individual can develop a tolerance to drugs, which is one reason why, as she put it, "one cannot say from a number on a report what an individual's impairment might be." We agree with the State that counsel was not deficient by presenting this testimony

11

through the chemist rather than by calling a defense expert to make substantially similar points. Either way, counsel had a basis to argue that the amounts of medications in Burwitz's system above the therapeutic range did not establish impairment.

¶39 Second, the record on balance supports a conclusion that counsel reasonably pursued the strategy of focusing on Burwitz's individual circumstances rather than on generalities about drug amounts and impairment. Counsel testified at the *Machner* hearing that he chose not to focus on the general issue of therapeutic range and impairment because he believed impairment would be specific to the individual. Both the chemist's trial testimony and the toxicologist's *Machner* hearing testimony indicate that this was a reasonable belief on counsel's part. Counsel also testified that he attempted to obtain a letter from Burwitz's physician confirming that Burwitz was safe to drive with the amounts of medications that were in his system at the time of the accident, but that a letter was not forthcoming. Unable to obtain a such a letter, counsel took a reasonable alternative course. He used the State's expert both to establish that the amounts of medications in Burwitz's system did not prove impairment and to highlight that there was no expert testimony that Burwitz was impaired.

### Conclusion

¶40 In sum, we conclude that Burwitz has failed to establish that trial counsel was ineffective on either of the two grounds that Burwitz claims. Accordingly, we affirm the judgment of conviction and the circuit court's order denying postconviction relief.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2023-24).