COURT OF APPEALS
DECISION
DATED AND FILED

August 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2037-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF255

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KAYLE ALAN FLEISCHAUER,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kayle Fleischauer appeals an order denying his postconviction motion in which he challenged his conviction for second-degree

reckless homicide. Fleischauer argues that he is entitled to a new trial on the grounds of ineffective assistance of counsel and newly discovered evidence. Fleischauer contends that his trial counsel was constitutionally ineffective by failing to object to the admission of evidence that Fleischauer stored all the guns he owned in his home, by failing to object to the State's references to the language on the shirt Fleischauer wore on the night of the shooting, and by failing to investigate and discover the victim's alleged "preexisting injuries." He also argues that the alleged fact of the victim's "preexisting injuries" constitutes newly discovered evidence.

¶2    We conclude that Fleischauer fails to show that his trial counsel performed deficiently and that the victim's "preexisting injuries" constituted newly discovered evidence. Accordingly, we affirm.

**BACKGROUND**

¶3    On April 17, 2018, the State charged Fleischauer with first-degree intentional homicide and possession of a firearm by an out-of-state felon.[1] According to the criminal complaint, Fleischauer fatally shot his son, Carter,[2] in Fleischauer's home on April 14, 2018. The matter proceeded to a jury trial in June 2019, at which Fleischauer was found guilty of second-degree reckless homicide. The circuit court, however, granted Fleischauer a new trial in August 2019 due to

---

[1] The circuit court granted Fleischauer's motion to sever the felon-in-possession charge, and it found Fleischauer guilty of that charge based on stipulated facts in an October 2019 bench trial. The felon-in-possession charge is not at issue in this appeal, and we do not address it further.

[2] Although not required by WIS. STAT. RULE 809.86 (2023-24), we refer to the homicide victim and his sister using pseudonyms in this opinion. All references to the Wisconsin Statutes are to the 2023-24 version.

juror misconduct. An amended Information subsequently charged Fleischauer with second-degree reckless homicide, by use of a dangerous weapon.

¶4 A seven-day jury trial subsequently took place between February and March 2020. The State's theory was that after a night of heavy drinking, Fleischauer and Carter got into a physical fight. Fleischauer walked to his bedroom, grabbed a gun from his nightstand, walked back to the kitchen, shot Carter, and then walked back toward his bedroom and dropped the gun in the hallway. The defense's theory was that after a night of heavy drinking, Fleischauer and Carter wrestled and then went to bed. Upon being unable to sleep, Carter returned to the kitchen, grabbed the gun on top of the refrigerator, and accidentally shot himself while seated on a stool, believing the gun was not loaded.

¶5 According to Carter's sister, Sophie, she and Carter went to Fleischauer's home on April 13, 2018, to help Fleischauer plan a celebration of life for his father (their grandfather), who had recently passed away. During the evening, Sophie, Carter and Fleischauer consumed alcohol and talked about several matters. At one point, Fleischauer repeatedly told Carter that he needed to "man up" because of an argument that Sophie had with one of her male friends.

¶6 The three also talked about guns that evening. Specifically, Fleischauer talked about the guns he already owned and the guns he had just inherited from his father. Fleischauer stated that he had a gun on top of his refrigerator "[i]n the event an Iraqi came in the house." Sophie testified that Fleischauer did not tell her or Carter the type of gun that was on the refrigerator and that Fleischauer did not show them the gun. During the evening, Sophie took

photographs of herself, Carter and Fleischauer, with the last one taken at 1:18 a.m. on April 14, 2018.

¶7     After 1:21 a.m., Sophie went to bed downstairs while Carter and Fleischauer remained upstairs. Sophie later awoke to the sound of movement and yelling upstairs. She heard Carter yell, "I would never hit my father," after which she yelled to Carter to come to bed. Sophie then heard an "extremely loud" noise, and she ran upstairs. When she reached the top of the stairs, Sophie found Carter in the kitchen, lying on his back by himself and bleeding from his head.

¶8     Shortly thereafter, Fleischauer emerged from the hallway that led from the kitchen to his bedroom. Sophie then called 911. Upon arriving, law enforcement located a gun on the floor of the hallway that led into the kitchen, approximately 10 to 15 feet away from Carter's body. The gun was a Taurus nine-millimeter semiautomatic handgun. An officer moved the gun to the kitchen and placed it on top of the refrigerator for safety reasons. When he placed the gun on the refrigerator, he noticed there was also a "BB or pellet-style gun" on top of the refrigerator.

¶9     The medical examiner concluded that Carter's cause of death was a gunshot wound to the forehead. The fatal shot was fired by the Taurus handgun that law enforcement found in the hallway. Carter also had several injuries on his face and body, including petechiae,[3] bruises, abrasions, contusions and cuts. He also had a skull fracture that occurred around the same time as those injuries and

---

[3] According to the medical examiner, "petechiae" are "little tiny bruises" that appear as "tiny red freckles."

4

prior to the gunshot wound. Fleischauer, on the other hand, only had a swollen right hand and a mark on his back.

¶10 The medical examiner further determined that Carter's death was a homicide. The Taurus handgun was determined to have been fired from a distance of five to nine inches from Carter's forehead. On the other hand, Fleischauer's expert, also a medical examiner, testified that Carter's death was an accident. He also stated that Carter's injuries could have occurred "seconds, minutes, or hours before his death. Some of them conceivably up to a day." He further stated that while all of Carter's injuries could have occurred at the same time, there was "no medical basis to say that they did occur at the same time."

¶11 Law enforcement found the Taurus handgun's holster and magazine in Fleischauer's nightstand in his bedroom. Pursuant to a search warrant, law enforcement subsequently found several other guns in Fleischauer's bedroom and in other parts of Fleischauer's home.

¶12 Law enforcement also found the black shirt that Carter wore earlier on the night of the shooting. The shirt had tears and holes along the neckline and on the side. Carter was the source of blood found on the shirt. Law enforcement also recovered a gray shirt that Fleischauer wore that night, which had "You're killing me, Smalls" written on the front. Carter's blood and DNA were on the shirt.

¶13 The jury found Fleischauer guilty of second-degree reckless homicide.[4] The circuit court subsequently imposed consecutive sentences totaling 22 years of initial confinement followed by 15 years of extended supervision.

¶14 Fleischauer moved for postconviction relief, seeking a new trial on the grounds of ineffective assistance of counsel and newly discovered evidence. Fleischauer argued that his trial counsel was ineffective by failing to object to the admission of evidence that he stored all the guns that he owned as inadmissible other-acts and habit evidence, by failing to object to the prosecutor's reference to the language "You're killing me, Smalls" in his closing argument, and by failing to investigate and discover Carter's "preexisting injuries" from the day before the shooting. Fleischauer also argued that the fact of Carter's "preexisting injuries" constituted newly discovered evidence.

¶15 The circuit court held a ***Machner***[5] hearing, at which Fleischauer's trial counsel testified. Following the hearing, the court issued a written decision denying Fleischauer's motion. The court concluded that trial counsel was not ineffective and that Fleischauer's newly discovered evidence claim was meritless. Fleischauer appeals. Additional facts will be provided below.

---

[4] The question of whether Fleischauer committed the homicide with the use of a dangerous weapon was not submitted to the jury but was instead submitted to the circuit court. The court determined that Fleischauer committed second-degree reckless homicide with the use of a dangerous weapon.

[5] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

**DISCUSSION**

¶16    On appeal, Fleischauer raises the same arguments that he did in his postconviction motion regarding ineffective assistance of counsel and newly discovered evidence.  An ineffective assistance of counsel claim presents a mixed question of fact and law.  *State v. Alexander*, 2015 WI 6, ¶15, 360 Wis. 2d 292, 858 N.W.2d 662.  The circuit court's factual findings regarding trial counsel's conduct and strategy will be upheld unless they are clearly erroneous.  *State v. Gutierrez*, 2020 WI 52, ¶19, 391 Wis. 2d 799, 943 N.W.2d 870.  Whether counsel's performance was deficient and whether the defendant was prejudiced by that deficient performance are questions of law that we review independently. *Alexander*, 360 Wis. 2d 292, ¶15.

¶17    A circuit court's decision to deny a motion for a new trial on the ground of newly discovered evidence is a discretionary decision, which we review for an erroneous exercise of discretion.  *State v. Avery*, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60.  However, whether there is a reasonable probability that a jury would have had a reasonable doubt as to the defendant's guilt is a question of law that we review independently.  *State v. Plude*, 2008 WI 58, ¶33, 310 Wis. 2d 28, 750 N.W.2d 42.

**I.  Ineffective Assistance of Trial Counsel**

¶18    An ineffective assistance of counsel claim requires a defendant to show both that his or her counsel's performance was deficient and that the deficient performance was prejudicial.  *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334.  Counsel's performance is deficient when his or her representation falls below an objective standard of reasonableness considering all the circumstances.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  We

7

strongly presume that counsel's conduct "falls within the wide range of reasonable professional assistance," *id.* at 689, and we give counsel's decisions in choosing trial strategy great deference, *Balliette*, 336 Wis. 2d 358, ¶26.

¶19 Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Id.* The defendant "need not prove the outcome would 'more likely than not' be different in order to establish prejudice." *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted). "Our concern is whether [counsel's] error rendered the trial unfair and unreliable." *Id.*, ¶33. We need not address both deficient performance and prejudice if the defendant fails to make a sufficient showing on one of those elements. *State v. Mayo*, 2007 WI 78, ¶61, 301 Wis. 2d 642, 734 N.W.2d 115.

¶20 Fleischauer argues that his trial counsel was constitutionally ineffective for three reasons. First, he contends that his trial counsel failed to object to the admission of evidence that he stored all the guns that he owned in his home as either insufficiently founded habit evidence or improper other-acts evidence, resulting in the admission of improper character evidence. Second, Fleischauer contends that his trial counsel failed to object to the prejudicial effect of the prosecutor's continued reference to the language "You're killing me, Smalls" on the shirt that Fleischauer wore on the night of the shooting. Third, Fleischauer contends that his trial counsel failed to investigate and discover Carter's "preexisting injuries" from playing basketball on the day before he visited Fleischauer.

8

¶21 As we explain below, Fleischauer fails to show that his trial counsel performed deficiently in any of the ways he alleges. Thus, we need not address the prejudice element. *See **id.***

### A. *The Evidence of Other Guns in Fleischauer's Home*

¶22 Prior to trial, Fleischauer moved to prohibit the State from presenting evidence of the other guns that law enforcement found in his home, arguing that they were not relevant and that the evidence was being presented to prejudice Fleischauer and confuse the issues. The State argued that it sought to present the guns to show that the Taurus handgun was not on top of the refrigerator because none of the other guns Fleischauer owned were in a place in which they would be accessible to anyone walking into the house. The circuit court reserved ruling on the issue, but it ordered the State not to show the guns at trial until it made its ruling.

¶23 When the issue arose at trial, the State characterized the evidence as that of Fleischauer's regular habit and practice of storing guns, in order to show that the Taurus handgun used to shoot Carter was also stored and not sitting on top of the refrigerator. The circuit court allowed the State to present the guns but ruled that it could show only photographs of the guns instead of the guns themselves. Using photographs, the State introduced evidence of the other guns found in Fleischauer's bedroom and the office across from the bedroom.

¶24 At the ***Machner*** hearing, trial counsel testified that he did not recall any testimony relating to Fleischauer's habit of storing his guns, but he did not believe that the evidence was habit evidence. Rather, counsel believed that evidence of the other guns was "inextricably intertwined with the case"—i.e., panorama evidence. Counsel further testified that the evidence that Fleischauer

stored all the guns he owned was part of both the State's and the defense's case theories. Specifically, counsel testified that Fleischauer lived in an area where it was "not unusual to have a pistol someplace … in case there's a break-in. And that's … what he told his kids that night, I have a pistol on the refrigerator." He also noted that the guns were part of the State's case to show that the Taurus handgun was not sitting on top of the refrigerator.

¶25 Fleischauer argues that there was no foundation to establish a habit because there was no evidence presented that Fleischauer was the one who stored the weapons in his home or that it would have been his habit to do so. Specifically, Fleischauer contends that there was no testimony "attributing the location and condition of the weapons as [Fleischauer's] exclusive doing." For this reason, Fleischauer asserts that evidence that he stored all his guns in his home was inadmissible character evidence and offered to show that Fleischauer "is the sort of person who carries deadly weapons." Because trial counsel knew that the evidence was not habit evidence, Fleischauer argues that his trial counsel was deficient in failing to object to the admission of that evidence, that counsel's belief that the evidence was panorama evidence is "unpersuasive and unsupported," and that counsel offered no strategic reason for not objecting to the admission of the evidence.

¶26 Evidence must be relevant to be admissible. *See* WIS. STAT. § 904.02. Evidence is relevant when it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." WIS. STAT. § 904.03. Habit evidence, "whether corroborated or not and regardless

10

of the presence of eyewitnesses, is relevant to prove that the conduct of the person … on a particular occasion was in conformity with the habit."  WIS. STAT. § 904.06(1).

¶27    With certain exceptions, character evidence is generally inadmissible to show that "the person acted in conformity therewith on a particular occasion." WIS. STAT. § 904.04.  One exception to this rule is other-acts evidence, which is allowed for certain purposes provided in the statute.  *See* § 904.04(2); *see also* *State v. Dukes*, 2007 WI App 175, ¶28, 303 Wis. 2d 208, 736 N.W.2d 515. Evidence, however, is not other-acts evidence "if it is part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime." *Dukes*, 303 Wis. 2d 208, ¶28.

¶28    Here, trial counsel did not perform deficiently by failing to object to evidence that Fleischauer stored all the guns he owned in his home as improper character evidence.  The evidence was part of the "panorama of evidence" because it bolstered both the State's and the defense's case theories, and it provided context for the shooting.  For the State, the evidence tended to show that Fleischauer stored the Taurus handgun in the nightstand in his bedroom, where law enforcement found the gun's holster and magazine, and supported its theory that Fleischauer walked to his bedroom to remove the Taurus handgun from its holster in his nightstand.  It further refuted the defense theory that the gun was already located on top of the refrigerator.  For the defense, the evidence tended to show that Fleischauer owned several guns, much like other people in the area, and that he kept one of them on top of the refrigerator for protection, as he informed his children that night.

¶29    Moreover, the evidence that Fleischauer stored all his guns provided context for the shooting, as Sophie testified that she, Fleischauer and Carter discussed guns on the night of the shooting. She also testified that Fleischauer talked about owning several guns, inheriting guns from his deceased father, and having "a gun" on top of the refrigerator. In addition, and contrary to Fleischauer's contention, Sophie's testimony and the guns that law enforcement found in Fleischauer's home—including in his bedroom—are evidence that Fleischauer, and no one else, was the one who stored the guns in his home.

¶30    Given that the evidence that Fleischauer stored all his guns in his home impacted both the State's and the defense's case theories and provided context for the offense, the evidence was inextricably intertwined with the case. The evidence was therefore relevant panorama evidence and not improper character evidence. Furthermore, counsel successfully reduced any prejudicial effect of such evidence, to which he initially objected on that ground, by obtaining a ruling that limited the State to showing the jury photographs of the guns rather than the guns themselves. Given trial counsel's accurate belief that evidence that Fleischauer stored his guns in his home was panorama evidence, counsel's decision not to object to the admission of that evidence as insufficiently founded habit evidence was reasonable and not deficient performance.[6]

---

[6] Fleischauer also argues that his trial counsel failed to request a jury instruction on habit evidence. He asserts that without the proper jury instruction, "jurors were unaware of their role in deciding whether the evidence of the guns constituted Mr. Fleischauer's habit" and "were left to assume that the State's unchecked characterization of the other guns as Mr. Fleischauer's habit was correct." Counsel was not deficient by failing to request the instruction, given that the evidence was panorama evidence and the purpose for which the State wished to use the evidence was clear. No instruction was needed.

¶31    For the same reason, trial counsel was not deficient by failing to object to the evidence as inadmissible other-acts evidence, as Fleischauer contends.  Fleischauer argues that counsel's failure to object to the evidence allowed the State "to portray Fleischauer as a gun-toting, careless individual," strengthening its theory that Fleischauer "was easily angered and even dangerous."  As explained above, however, evidence that Fleischauer stored his guns in his home was part of the panorama of evidence needed to describe the offense and was inextricably intertwined with the offense because it impacted both the State's and the defense's theories of what occurred on the night of the shooting and provided context for what occurred that night.  The evidence was not offered to portray Fleischauer in a certain way.  Moreover, Fleischauer never claimed that he did not store the guns in the manner stated.  In all, Fleischauer's counsel did not perform deficiently in this regard.

### B.  The Prosecutor's Reference to "You're killing me, Smalls"

¶32    Fleischauer next argues that his "trial counsel failed to object to the prejudicial effect of the [prosecutor's] continual reference to" the language "You're killing me, Smalls" on the shirt that Fleischauer wore on the night of the shooting.   Fleischauer contends that the prosecutor "consistently and systematically elicit[ed] the statement[] on the shirt" and attributed the statement to Fleischauer in the prosecutor's opening statement, throughout trial testimony, and during his closing argument.  By doing so, Fleischauer asserts that the prosecutor "arguably ascribe[d] a motive to kill upon Fleischauer as denoted by [the] messaging upon his shirt."

¶33    In their opening statements, both the prosecutor and defense counsel referenced Fleischauer's shirt.   The prosecutor referenced the shirt and its

13

language when describing where it was found and stating that it had Carter's blood on it. Defense counsel stated that the language on the shirt was from a movie about baseball and not from anything violent. During the trial, Sophie testified that Fleischauer was wearing the shirt in the photograph that she took of him on the night of the shooting and that he was wearing the same shirt in a photograph that she had taken of Carter and Fleischauer when Carter had started college. The State also presented Fleischauer's and Carter's shirts to the jury and showed it photographs of Fleischauer's shirt.

¶34    In their closing statements, both the prosecutor and defense counsel again referenced the shirt and its language. The prosecutor referred to both Carter's and Fleischauer's shirts:

> [Y]ou can see with your own eyes the blood on the front of that shirt, the blood on the back of [Carter's] shirt. It's torn, ripped, it's torn up the side, torn around the collar. [Carter] was in a fight. [Carter] lost.
>
>    Let's see who won. You're killing me, Smalls. [Carter's] blood. Not even [Fleischauer's] own DNA on his own shirt, and somehow no DNA means he didn't shoot [Carter]. Really? Really?… But other than those two holes, no damage to that shirt, except [Carter's] blood all over it.

In response, defense counsel referred to the time that Fleischauer took Carter to college: "He's up there with his son, with his arms around him. With the same shirt on. 'You're killing me, Smalls.' What does it—right below, it says 'Sandlot,' which is a movie. So, shirt from a movie."

¶35    At the *Machner* hearing, Fleischauer's trial counsel recalled that the prosecutor referenced the language on the shirt in his closing argument, but that there was not a reference to the movie from which the language came during the trial. As to why he did not object to the prosecutor's reference to the language,

counsel explained: "[T]his T-shirt thing, I figured at least somebody on the jury would realize where it came from. It's not some act of violence, and would think that [the prosecutor] was grasping for straws." In concluding that counsel was not ineffective for failing to object to the language, the circuit court found that counsel made a strategic decision not to object because counsel thought the prosecutor "looked silly making [the reference] and was grasping at straws."

¶36     We agree. Trial counsel did not perform deficiently by failing to object to the prosecutor's reference to the language "You're killing me, Smalls." "Counsel is allowed considerable latitude in closing arguments," and the prosecutor's reference fell within that wide latitude. *See State v. Bell*, 2018 WI 28, ¶39, 380 Wis. 2d 616, 909 N.W.2d 750 (citation omitted). "A 'prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him [or her] and should convince the jurors.'" *Id.* (citation omitted). A prosecutor's comment is improper if the comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See id.*, ¶40 (citation omitted).

¶37     Here, the prosecutor pointed to the two shirts presented to the jury, emphasized the difference between the shirts, and explained how he believed that difference supported the State's theory that Carter and Fleischauer were fighting and not wrestling. As the State notes, the reference to the language on the shirt was the prosecutor pointing out a "tragic irony": Fleischauer "was wearing a shirt that read, 'You're killing me, Smalls' while pummeling his son and inflicting significant injuries in a decidedly one-sided fight, leaving his deceased son's blood and DNA all over the shirt." Trial counsel made a reasonable strategic decision not to object and, rather, responded in his closing by reminding the jury that the

language on the shirt came from a movie and that Fleischauer wore the same shirt on a less tragic occasion.

¶38    There was nothing improper about the prosecutor's reference to the language on the shirt, given that he was arguing that the jury should reach a certain conclusion regarding that evidence.  Fleischauer's trial counsel made a reasonable decision not to object and reasonably responded to the prosecutor's argument. Therefore, counsel did not perform deficiently.

### C. The "Preexisting" Injuries

¶39    Fleischauer also argues that his trial counsel was ineffective by failing to investigate and discover Carter's "preexisting injuries."  At sentencing, Carter's mother mentioned that the night before Carter and Sophie visited Fleischauer, Carter had played basketball for three hours and was sore.  Given that the timing of the injuries that Carter sustained prior to the gunshot wound "was critical in accepting the State's narrative of events," Fleischauer contends that Carter could have sustained those injuries when he played basketball the night before he visited Fleischauer.

¶40    At the *Machner* hearing, trial counsel testified that he reviewed all the discovery he received from the State and that, prior to the sentencing, there had not been any reference to Carter's soreness or injuries before the altercation. Counsel also explained that he had a second medical examiner determine whether the State's medical examiner was accurate in saying that the skull fracture was not a result of the gunshot wound.  He believed it would have been relevant to establish that Carter fractured his skull prior to visiting Fleischauer because the fact that a skull fracture was identified hurt the defense.

¶41    Trial counsel further testified that he would not have changed his theory of defense if he had known Carter was sore from playing basketball because "arguing that he was sore from a basketball game, which is entirely different from the injuries that he had, the jury would probably think I was a little off. I wouldn't argue that. It would be an unreasonable argument, in my mind." Counsel also noted that "wrestling bruises are substantially different than being sore from playing basketball," adding that "you won't fracture your skull in a basketball game. And if you do, usually you go to the hospital. So, … I don't see where having him playing basketball the night before would be important." Counsel further noted that Carter did not have any visible injuries in the photographs that Sophie took on the night of the shooting.

¶42    We conclude that trial counsel did not perform deficiently by failing to investigate the purported "preexisting injuries" because there were no such injuries and, accordingly, had counsel investigated, he would have discovered them if they existed. As counsel put it, there is a substantial difference between soreness from playing basketball and injuries sustained from a physical fight. In reviewing discovery and consulting an expert, counsel found no evidence of injuries to Carter prior to him arriving at Fleischauer's home because there were none to discover. To argue that Carter's injuries could have resulted from playing basketball is, as the circuit court put it, an unreasonable "leap of logic."[7]

---

[7] Fleischauer additionally argues that his trial counsel's three alleged errors, taken together, "support a reasonable inference of a differen[t] result." Because Fleischauer has failed to show his trial counsel performed deficiently on any of the grounds he alleges, we reject his aggregate prejudice claim. *See State v. Thiel*, 2003 WI 111, ¶¶60-61, 264 Wis. 2d 571, 665 N.W.2d 305 (explaining that while a court "may aggregate the effects of multiple incidents of deficient performance" when determining prejudice, a defendant "may not simply present a laundry list of mistakes by counsel and expect to be awarded a new trial").

## II. Newly Discovered Evidence

¶43    Finally, Fleischauer argues that the fact that Carter was sore from playing basketball the night before he visited Fleischauer is newly discovered evidence that warrants a new trial.  When moving for a new trial based on newly discovered evidence, a defendant must show, by clear and convincing evidence, that "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Avery*, 345 Wis. 2d 407, ¶25 (citation omitted).  If the defendant makes this showing, the circuit court must determine whether there is a reasonable probability that a different outcome would be reached at trial.  *Id.*  A reasonable probability of a different outcome "exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Id.*

¶44    Fleischauer contends that evidence that Carter was sore from playing basketball was material because the State intended to prove that a fight occurred between Carter and Fleischauer.  Fleischauer asserts that Carter's injuries thus "act as circumstantial evidence that an altercation occurred" and that the timing of those injuries is "equally material to the plausibility of the State's narrative." Fleischauer concludes that any evidence that tends to establish that some, if not all, of Carter's injuries occurred before he arrived at Fleischauer's house is "necessarily material."

¶45    As explained above, however, soreness from playing basketball is substantially different from injuries sustained in a physical fight.  The photographs that Sophie took on the night of the shooting do not show Carter with any noticeable injuries, and there was no testimony that Sophie, Carter and Fleischauer

discussed any injuries to Carter that night. Given the extent of Carter's injuries following the shooting, which included a fractured skull, Fleischauer cannot show that Carter's soreness from playing basketball served as a reasonable explanation for the injuries he sustained on the night of the shooting. Because Fleischauer cannot show that Carter's "preexisting injuries" were material to establishing when the injuries occurred, those "injuries" did not constitute newly discovered evidence.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.